We have one argued case this morning, it's number 22-2192, Coppola v. Department of Veterans Affairs. And we have Mr. Coppola arguing by video. You may proceed. Good morning. May it please the court, Ralph Coppola, representing Dr. Ralph Coppola. The court committed reversible error because it did not consider all of the evidence under the CAR factors. Namely, it did not consider the performance reviews of Dr. Coppola, including the 2011 performance review that he provided world-class service to the veterans and was an excellent provider. And then strangely, a week after he was terminated by the VA, there was another performance review that found him to be satisfactory. The AJ did not consider either of these performance reviews. The AJ also failed to consider, under the CAR factors, that Dr. Coppola had successfully completed his focused professional practice examination review, his PIP. On those basis, the court should reverse and remand the case to the AJ. You argued extensively in your reply brief about the March 2012 evaluation, but I don't think you argued that much in the opening brief. I could only find a single sentence in the opening brief about that. Is that correct? That is correct. On page 4, I put it in the FAPS. There was a rebuttal to the argument by the VA that the VA had successfully completed the CAR factors. Well, then, why shouldn't we find there's a forfeiture of the argument about the March evaluation? There is no need to find a forfeiture of the argument because it was in my rebuttal, and the VA did raise the issue that they had successfully completed the CAR factors. But you have to make arguments in your opening brief to preserve them. That's the problem. I believe that it was successfully raised in the FAPS. Likewise, did you raise this specific issue in front of the board? I looked at the board's opinion, and it looks like a very thorough opinion, considering a lot of different issues, and I didn't see this particular progress evaluation report being evaluated against the strength of the evidence of all of the different issues regarding unprofessionalism or failure to follow orders. And so that makes me wonder, did you, sir, raise this progress evaluation in the context of why you believe that the evidence against Dr. Coppola, in fact, wasn't so strong? I did, Your Honor. In fact, there was an issue because there were two different versions of the report. The VA had a version that did not include the final recommendation that Dr. Coppola had successfully completed, the PIP. I guess, sir, the concern I have is that I cannot tell, looking through the joint appendix, whether you, in fact, raised this progress evaluation in the way that you're now raising it in your gray brief. Yes, I did, Your Honor. So then, in your view, the board must have overlooked this argument? Is that your... The board did overlook this argument, Your Honor, yes. Okay. But again, getting back to Judge Dyke's point, I didn't see you making that kind of legal error argument in your blue brief, in your opening brief to us. Is that fair to say? That would be fair to say, other than I raised it on page four in the facts. Okay. Well, I mean, to give you credit for it, I do think there's a single sentence on page 25 of the opening brief that mentions it also. Thank you, Your Honor. The VA had a burden of evidence to show that it would not have otherwise terminated Dr. Coppola. What is interesting in this case is that the Douglas factor checklist was done in April. The decision to terminate him was purportedly made in May, but the VA did not, quote, unquote, pull the trigger until September, and it did not pull the trigger until Dr. Coppola had appeared for his second protected whistleblowing on TV, along with Dr. Mojaveda, and Dr. Mojaveda was also terminated. So the argument is that they would not have terminated him at all. They had decided to not terminate him because he was such a valuable provider. And the only reason they terminated him was that he appeared on TV with Dr. Mojaveda, which embarrassed the VA. And it's also inherently improbable that Dr. Ross, as his supervisor, did not know of the VA investigation because the VA investigation was an on-campus investigation. It was public. It consisted of two different visits over a course of two different weeks, and the testimony of Dr. Ross was that she provided a new kind of oversight, that she was very active. The investigation considered three different deficits in her department, so it was inherently improbable that she did not know that when she was preparing the decision to terminate Dr. Coppola. Well, there are two incidents, and perhaps more, that happened after this March 16th evaluation. There was the Horan complaint and then the failure to move appropriately to cancel these patient appointments, correct? And both of those were relied on in connection with the termination. And the A.J.'s finding in both of those was incorrect in that, with regard to Horan, he refused to corroborate what Dr. Ross had put in her paperwork under his testimony at court. And then with regard to the clinic cancellation, the A.J. found that Dr. Coppola had canceled a clinic that, in fact, was actually canceled by Dr. Brilliant, according to the evidence in the appendix. Say that last thing again. I didn't understand what you said. Oh, I apologize. According to the evidence in the appendix, the clinic cancellation that the A.J. is referring to is actually a cancellation of the cancer clinic by Dr. Brilliant, not by Dr. Coppola. There were 23 appointments that were canceled without following appropriate procedures. That was the finding by the A.J., right? That was an incorrect finding because that refers to the cancer clinic cancellation that was actually canceled by Dr. Brilliant. It was not canceled by Dr. Coppola. Are you saying there's no testimony that 23 appointments were canceled improperly? The testimony by Dr. Ross was incorrect. Well, that's not our job to determine whether it was incorrect. If there's substantial evidence supporting the findings, we have to approve them. Well, even if there were two incidences after the successful completion of the PIP, the fact remains that the V.A. did not terminate Dr. Coppola for four and a half months until he appeared on TV. So we can reasonably conclude that they had determined to not terminate Dr. Coppola. And if he had not appeared on TV, he would not have been terminated. And the sole reason for his termination was his appearance on TV. Because nothing had happened after those two incidences, which were before his termination, his termination in May of 2012. Nothing happened. Your deduction for why Dr. Coppola was eventually terminated, which factor of the CAR factors should we be thinking about your deduction through? Is it CAR factor one, strength of the evidence? Well, under this CAR factor one, strength of the evidence, I raise the issue that Dr. Coppola could not have been terminated because he was a permanent employee and the V.A. did not follow procedure. But this is a whistle-blowing case, and so we're not trying to figure out the correctness or incorrectness of the process of the termination. We're trying to figure out the strength of the evidence under CAR factor one of whether the agency would have chosen to terminate the appellant anyway. Yes, but it could not have decided to terminate. It's not in our permanent defense. Rather, I believe that under CAR factor one, the V.A. has to show in its burden that it could have terminated Dr. Coppola. And since it did not follow the procedures, it could not have terminated Dr. Coppola. Also, under CAR factor three, under RITMOR, the V.A. presented no evidence of similarly situated physicians that were terminated, and so CAR factor three disappears, leaving just CAR factor one and CAR factor two. Okay, you're into your rebuttal time. Do you want to save the rest of it? I shall save the rest of it. Thank you, Your Honor. Okay. Ms. Bond? May it please the Court. I'll start, if I may, where Mr. Coppola did in discussing the performance issue. First of all, a specific focus on the FPPE is waived. It wasn't addressed in detail in the opening brief. But the administrative judge, the MSPB, did address this issue, and it found that the reason that Dr. I'm not sure about that. Where did the A.J. address this issue? You're using the term issue very broadly, I think. Well, what I'm trying to say is the path can reasonably be discerned. And the reason for that is that the MSPB explained that Dr. Rawson acted independently and as the primary decision maker on both of the personnel actions. Let's talk specifically about the March 16, 2012, evaluation. And the evaluation does seem potentially inconsistent with attributing significance to the prior patient complaints and other issues that happened before the March 16 date. And while it's true that other things reflecting adversely on the petitioner occurred after March 16, the termination relied on pre-March 16 events also. So what are we to make of this? I mean, it seems extremely odd to find that in March 16 the problems have been solved and then later on for the agency to be relying on those same events to terminate them. What's the answer to that? This is not something that I saw addressed by the A.J. Well, to take the issues in reverse, I think what the MSPB said about this is at A33, where the board said Dr. Rawson explained that her main concern was the interpersonal issues. And then we look to the FPPE. This is confirmation of competency. So this is focusing on, for example, at A1011, 1011, focusing on pathology reports, treatment of positive margins, so the biopsy issue. So this is a question focusing on competency of practice. So the focus, professional practice evaluation. This is focusing on competency of practice. And one of the triggering issues was internal review of positive margins of the biopsies. I'm confused. On 1010, we find discussion of plaintiff complaints is leading to this performance improvement plan, right? So at page 1010, yes, it lists patient complaint, singular. But then when we look to the next page, and it's discussing how it was that they assessed competency here, it's looking at reviewed 20 medical records and looking at clinic notes to see, did he adequately address the biopsy results? Were the patient margins on the biopsies being adequately reviewed? And that's addressing internal review of the positive margins. So I think this is completely consistent with the MSPB's findings, that the reason for removing Dr. Coppola was not that he wasn't doing adequate biopsy reviews, or he wasn't skilled enough to understand when a biopsy was done. It's his interaction with patients and with staff and following procedures, right? Under the FPPE? No, the termination. The termination, yes. Yes, the termination, yes. But the FPPE is focused on the biopsy review of records, the pathology results, whereas at A33, for example, the MSPB found that Dr. Rawson's motivating concern with the removal was the disrespectful interactions with patients and with staff. What is the impact of his status as an at-will employee on this at all, or even on any of the CAR factors? It's a fact that the MSPB considered, but the MSPB found, as a matter of fact, that Dr. Coppola was an at-will employee, and that even if he was not, it did not affect the CAR factors because the evidence was so strong that it didn't reflect a retaliatory motive. So the CAR factors, the question really is, is there an independent line of causation separate from the protected disclosures, separate from the whistleblowing conduct that supports what the agency did? So under CAR Factor 1, you're looking at that evidence. Here, the evidence is strong that there was an independent line of causation. Dr. Rawson was the primary and initiating person for both personnel actions. She did not know about the protected disclosures when she took those actions. That's at A14. And she had a strong basis, the MSPB found, for her concerns with Dr. Coppola's disrespectful conduct and failure to follow policy, and that she was entitled to remove him as an at-will employee. But the problem is that in terms of the strength of the negative information about Dr. Coppola, I think the argument is that the agency found that to be significant when it terminated him, but didn't find it significant in March. That's the argument, as I understand it. And that sort of casts doubt on the credibility of the assigned reasons for the termination. So just so I understand the question, are you asking whether the FPPE reflects that the agency didn't think it had at-will ability to remove him? No, no, no. The problem is that the evaluation where the check provider met all criteria, fully successful FPPE noting competence, that that appears to be inconsistent with treating the earlier instance as disqualified. Yeah. So I think the difference here is the difference between medical competence to, for example, identify a cancer result from a biopsy, versus the conduct concerns about being disrespectful to patients, leaving one patient feeling like a beaten child, or the disrespectful conduct to lower-level staff, yelling at the transcription clerk, or engaging in demeaning behavior with others, and the failure to follow policies, even when told repeatedly, not canceling clinics in ways that negatively impacted patient care, the nurse practitioner signing informed consents, not following the policy on informed consents, and really reflecting no concern when told that this is a violation of policy. So those are different, I think, than the medical competence that's being addressed here. I just have a hard time reading it that way, because the box that's checked on 1010 says complaint of complaint. You want to read that as referring to a single complaint, but I don't think that that's necessarily correct.  That is the reason for the initiation of this FPPE, plaintiff complaint. Yeah. But then when you look at the competency, the way that competency is assessed, it's really not addressing that. So I think that based on that, a reasonable person could still align with what the findings of the MSPB were, that the reason for removing him was this overall disrespectful conduct, because the very next page, when it's listing the different issues being addressed, pathology reports, each clinic note should contain a clear chief complaint assessment and plan. I'm sorry, which page are you looking at? It's 1011, JA 1011. So that's listing the analysis that's being performed to assess competency. So it's really not going to those broader issues that Dr. Rawson is addressing in her proposed removal and the broader concerns that motivated her removal, which is what the MSPB found. Were there additional things between the March progress report and then the May recommendation for removal? For example, I think Judge Dyke referred to the Horan complaint. There was also problems with the informed consent forms. And then also the clinic cancellation problem. Yes, there is, at pages 766 to 767, we have the summary of disciplinary issues with the dates. So there are a few issues. So failure to follow up with patient complaints and concerns despite notification from patient advocate and direct instruction, that's 4-11-2012. So that's after the March date. Failure to follow policy of informed consent, that was 4-10-2012. And there's a few other listed issues. Another episode of disrespectful conduct despite prior reprimand and disrespectful conduct, 4-11-2012. That's relating to the, as Your Honor noted, the TH incident. So there were issues following that. And I think that pages 54 to 55 of the MSPB's decision, I think, address, as well as page 14 and 33, discuss the motivation and the motivating considerations of Dr. Rawson being a disrespectful conduct. And I think a reasonable person could read those concerns to be separate from the FPPE. Yes, that may well be true, but the problem is a reasonable person didn't address them. And say that despite the March evaluation, things happened later. I mean, the AHA just didn't get into that. Now, maybe the AHA didn't get into that because it wasn't arguing with the AHA. I did go back and I was having the same question about some of the issues raised in the reply brief, whether they were presented to the AHA. And I did go back and read the closing statements, which are not in the appendix. And I don't recall the FPPE issue being addressed separately. The point being raised was he had performance reviews that were satisfactory performance reviews, so that's inconsistent. That was raised and that was addressed. The AHA said essentially that supports the fact that Dr. Rawson wasn't acting with retaliatory motive here because she was acting in an even-handed way, saying that performance could be satisfactory, but identifying these concerns about conduct and disrespectful conduct that motivated the ultimate removal. So I think that the AHA did address that. And I think that's at A33 or A41 where that distinction was being drawn. And also in the section addressing motivation to retaliate, the MSPB went into detail about those different considerations, and specifically finding that Dr. Rawson did not have motive to retaliate and identifying her performance evaluations as supporting that conclusion. So I think that's where the judge addressed it. And the specific concern being raised here that somehow the FPPE made it unlawful or something like that to then act subsequently, that I don't recall being raised as a legal argument to the MSPB. So in addition to not being presented in the blue brief and being waived in this court, I don't believe it was exhausted in a clear way at all before the MSPB. The MSPB did address in detail. It's an almost 60-page analysis addressing the hearing, addressing credibility, finding Dr. Rawson to be credible specifically, that she acted independently, that she had a strong basis for her concerns with Dr. Coppola's conduct. So this is a detailed opinion, and I don't see any place that a specific concern that somehow it was unlawful or legally improper to take this action when the FPPE had been completed. And I think logically reading the motivation to retaliate section of the MSPB's decision, that's all wrapped up. The fact that Dr. Rawson was even-handed and said, yes, you are now identifying a chief complaint, you are correctly conducting the biopsies, so therefore I'm going to find that you are competent in the FPPE, that I think goes to support a reasonable basis for the MSPB's finding there was no motive to retaliate for Dr. Rawson. What was the date of the TV appearance? Pardon? What was the date of the TV appearance? It was two days before the removal. I believe it was September 11th, and the removal was effectuated on September 13th. And again, overall, the MSPB found at page 54 that the initiating person, and largely independently the actor was Dr. Rawson, who did not know about the disclosures, and she made those proposals and those decisions before any interview occurred, and without knowledge of the October 2011 disclosure. Okay. Anything further? For those reasons, we respectfully request that the Court affirm the decision of the MSPB. Okay. It is inherently improbable that Dr. Rawson did not know. The Court found that Laura Stapp, the person in charge of the investigation, knew of both the whistleblowing to the OMI and of the TV appearance. It also found that Dr. Brennan and Dr. Schwedemelt knew of it. The Court also found that Dr. Rawson paid particular attention to what was going on in the hospital. So everybody knew that Dr. Rawson, that's just inherently improbable, and that means that the investigation was a retaliatory investigation and should be disregarded. Also, the final performance review was two weeks after Dr. Coppola was terminated, and that performance review found it was an admission against interest. It found that Dr. Coppola had done everything successfully and satisfactorily in the last year. Where do we find that? Which page of the appendix is that at? I'm not certain, Your Honor. I apologize. That would be the final performance review. And on that basis, the termination of the VA should be reversed. Okay. Thank you. Thank you, both counsels. Thank you, Your Honor. The case is submitted. That concludes our session for this morning.